UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

| | |
|---|---|
| In re:<br><br>Alexandra L. Aikens,<br>*a/k/a* Alexandra Davey,<br>*a/k/a* Alexandra Pearson,<br><br>    Debtor.<br>_____/ | Chapter 7<br><br>Case No. 20-43893<br><br>Hon. Phillip J. Shefferly |
| Timothy J. Miller, Chapter 7 Trustee<br>for the bankruptcy estate of<br>Alexandra L. Aikens,<br><br>    Plaintiff,<br><br>v.<br><br>Robert Aikens,<br><br>    Defendant.<br>_____/ | Adversary Proceeding<br>No. 20-4316-PJS |

**OPINION (1) GRANTING IN PART DEFENDANT'S MOTION TO DISMISS;
(2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND
(3) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## Introduction

The debtor and the defendant were married. Shortly before the debtor filed this chapter 7 case, the debtor and her husband entered a consent judgment of

divorce. One of the provisions in the consent judgment splits the responsibility for certain debts between them and requires each of them to hold the other harmless. The chapter 7 trustee filed a complaint claiming that the debtor's right to enforce this provision in the consent judgment is now property of the bankruptcy estate and requesting the Court to enforce this provision for the benefit of the bankruptcy estate. The defendant moved to dismiss the complaint for failure to state a claim. In addition, both the trustee and the defendant moved for summary judgment. For the reasons in this opinion, the Court will grant in part the defendant's motion to dismiss, deny the defendant's motion for summary judgment and grant the trustee's motion for summary judgment.

**Jurisdiction**

This is a core proceeding under 28 U.S.C. § 157(b)(2)(E), over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(a) and § 157(a).

**Facts**

The parties to this adversary proceeding agree on the following facts.

Alexandra L. Aikens ("Alexandra") and Robert Aikens ("Robert") were married. During their marriage, they lived at 43945 Marne Ct., Canton, Michigan 48188 ("Marital Home"). On May 28, 2019, Alexandra filed a complaint for divorce in the Wayne County Circuit Court Family Division ("State Court"). On

February 10, 2020, the State Court entered a Judgment of Divorce ("JOD") with the consent of Alexandra and Robert.

The JOD has a section titled "Marital Home" that states that the Marital Home is listed for sale and that it is also in foreclosure. This section further states that if the Marital Home is sold before the foreclosure occurs, any sale proceeds will be applied to specific debts in the order of priority listed in that section. The next section in the JOD is titled "Marital Debt." It spells out Alexandra's and Robert's responsibilities for specific debts depending on whether the Marital Home is sold or foreclosed. One of its provisions states that,

> in the event the [Marital Home] is sold, and sale proceeds are applied to some of the parties['] debt, but there aren't enough proceeds to pay all the parties['] debt, the parties will equally be responsible for 50% [of] the balance of the debt that remains owing and will hold the other harmless.

On March 16, 2020, Alexandra filed this chapter 7 case. Timothy Miller ("Trustee") was appointed as the chapter 7 trustee. On May 21, 2020, the Trustee, Alexandra and Robert signed a stipulation to enter an order authorizing the Trustee to sell the Marital Home. The stipulation expressly states that it does not resolve any dispute under the JOD regarding any responsibility that Robert may have with respect to the debts listed in the JOD. The Marital Home was then sold for $203,000.00. This was enough to pay the mortgage on the Marital Home and closing

costs, and even left some funds over to pay a portion of the debts described in the JOD. But it was not enough to pay all the debts listed in the JOD. According to the Trustee, there remains an unpaid balance of $85,229.24 on the debts listed in the JOD. Robert does not dispute the Trustee's calculation.

On July 29, 2020, the Trustee filed a one count complaint ("Complaint") against Robert under § 542(a) and (b) of the Bankruptcy Code for turnover of property to the bankruptcy estate. The Complaint alleges that, despite being listed in the Marital Debt section of the JOD, these debts were all incurred solely in Alexandra's name. The Complaint asks for turnover in the amount of $42,614.62, representing one-half of $85,229.24, the remaining unpaid balance on those debts. The Complaint requests a judgment in this amount against Robert under the Marital Debt section of the JOD.

On September 30, 2020, the Trustee filed a motion ("Trustee's Motion") (ECF No. 10) for summary judgment. On October 8, 2020, Robert filed a combined motion ("Robert's Motion") (ECF No. 11) to dismiss the Complaint and for summary judgment. The Trustee and Robert filed responses to the motions and replies to the responses. On November 13, 2020, the Court held a hearing on both motions and took them under advisement.

The Court will first address the request for dismissal in Robert's Motion and then turn to the competing requests for summary judgment in the Trustee's Motion and in Robert's Motion.

## Robert's motion to dismiss

Robert's Motion requests dismissal of the Complaint for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In deciding a motion to dismiss for failure to state a claim upon which relief may be granted, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true . . . . A court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001) (citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S.

- 5 -

20-04316-pjs    Doc 25    Filed 12/03/20    Entered 12/03/20 11:40:09    Page 5 of 18

at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted).

The Complaint states that it is brought under § 542(a) and (b) of the Bankruptcy Code. Section 542(a) expressly applies only to "an entity, other than a custodian, in possession, custody or control, during the case, of property that the trustee may use, sell, or lease . . . or that the debtor may exempt . . . ." The statute provides that such entity, subject to certain exceptions, "shall deliver to the trustee . . . such property. . . ." Paragraph 27 of the Complaint recites the elements of the statute, but the Complaint nowhere alleges that Robert is in "possession, custody or control" of any identifiable property that he could "deliver" to the Trustee. The Complaint does not plead enough facts to meet the Twombly/Iqbal facial plausibility test. The Court will therefore grant Robert's Motion to the extent that it requests dismissal of the Trustee's claim under § 542(a).

In contrast to § 542(a), § 542(b) has no required possessory element but expressly applies to "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order . . . ." The statute provides that such entity, subject to an exception for an offset, "shall pay such debt to . . . the trustee . . . ." Paragraphs 13, 18, 24, 25 and 28 of the Complaint allege that Robert

owes a debt under the JOD, the debt is property of the bankruptcy estate, and the debt is now matured.  The Complaint pleads enough facts to meet the Twombly/Iqbal facial plausibility test.  The Court will therefore deny Robert's Motion to the extent that it requests dismissal of the Trustee's claim under § 542(b).

### **Cross motions for summary judgment**

Robert's Motion and the Trustee's Motion each request summary judgment under Fed. R. Civ. P. 56, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056.

Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48.  A "genuine" issue is present "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Berryman v. Rieger, 150 F.3d 561, 566 (6th Cir. 1998) (quoting Anderson, 477 U.S. at 248).

The first two terms used in § 542(b) are defined terms under § 101 of the Bankruptcy Code.  Section 101(15) states that the term "entity" includes a person.

Robert is a person. There is no genuine dispute that the first element of § 542(b) is met.

Section 101(12) states that the term "debt" means "liability on a claim." Section 101(5)(A) states that the term "claim" means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" The Trustee argues that Robert owes a debt under the Marital Debt section of the JOD. Robert disputes that this section creates a debt.

Under Michigan law, a consent judgment of divorce is treated as a contract between the parties to the consent judgment. "A consent judgment [of divorce] is in the nature of a contract, and is to be construed and applied as such." Foster v. Foster, 949 N.W.2d 102, 113 (Mich. 2020) (quotation marks and citation omitted) (addressing a consent judgment of divorce). Accordingly, consent judgments of divorce are examined under "ordinary principles of contract interpretation." Andrusz v. Andrusz, 904 N.W.2d 636, 641 (Mich. Ct. App. 2017) (citation omitted). "Unambiguous contracts must simply be enforced as they are written, absent a handful of extremely unusual circumstances like fraud, duress, or illegality." Id. (citing Rory v. Continental Ins. Co., 703 N.W.2d 23 (Mich. 2005)).

Typical of any contract, the JOD contains terms that both Alexandra and Robert agreed to. Some of those terms are in the Marital Debt section of the JOD. In that section, Alexandra and Robert agreed to apply the proceeds of sale of the Marital Home to specifically identified debts. They also agreed in that section to what would happen if there were not enough sale proceeds to pay all the specifically identified debts. In that event, Alexandra and Robert agreed that they "will equally be responsible for 50% of the balance of the debts that remains owing and will hold the other harmless." Although much of the focus in Robert's Motion and the Trustee's Motion is on the hold harmless verbiage in this section, the text of their agreement in this section actually contains two promises that they made to each other: first, a promise to "equally be responsible" for the unpaid debts; and second, a promise to "hold the other harmless." Under the Bankruptcy Code definitions of a claim and a debt, the Court holds that these promises give rise to claims in favor of both Alexandra and Robert against each other and make them each liable for a debt to the other under the JOD. There is no genuine dispute that the second element of § 542(b) is met.

The third element of § 542(b) is that the debt must be "matured, payable on demand, or payable on order." This is the element at the center of the dispute between the Trustee and Robert. The Trustee argues that under the express terms of

- 9 -

the Marital Debt section of the JOD, the debt matured once the Marital Home was sold by the Trustee in June 2020 and the sale proceeds were not enough to pay all the debts listed in the Marital Debt section of the JOD. Robert argues that the debt has not yet matured and that it will not mature unless and until Alexandra suffers some harm. In other words, the harm arises only if and when she is asked to pay for any of the specific debts listed in the Marital Debt section of the JOD. It follows, according to Robert, that not only has the debt not yet matured, it will never mature because Alexandra decided to file bankruptcy and has now obtained a chapter 7 discharge of the specific debts listed in the Marital Debt section of the JOD.

Robert's analysis overlooks a significant fact previously mentioned by the Court. Robert made two separate promises in the Marital Debt section of the JOD: one promise to be responsible for 50% of the unpaid debts, and another promise to hold Alexandra harmless. Even if the Court were to accept Robert's argument that his promise to hold Alexandra harmless has not matured because there is no evidence that any of the creditors holding the listed debts have made demand on Alexandra for payment, Robert offers no valid argument as to why his promise to be responsible for 50% of the listed debts has not matured. The only conditions precedent to trigger Robert being "responsible for 50% of the balance of the debt that remains owing" are that the Marital Home "is sold, and sale proceeds are applied to some of the

parties['] debt, but there aren't enough proceeds to pay all of the parties['] debt . . . ." It is beyond dispute that this is exactly what happened. Under the plain language of the JOD, Robert is now "responsible for 50% the balance of the debt that remains owing." The debt that arises from Robert's promise to do so is now matured. There is no genuine dispute that the third element of § 542(b) is met.

The final element of § 542(b) is that the debt must be property of the bankruptcy estate. When Alexandra filed her chapter 7 case, a bankruptcy estate was created under § 541(a) of the Bankruptcy Code, comprised of all legal or equitable interests of Alexandra in property wherever located and by whomever held. Under this section, Alexandra's property interests under the JOD came into her bankruptcy estate. That includes any claim against Robert under the Marital Debt section of the JOD. There is no genuine dispute that the final element of § 542(b) is met.

Although the Court finds that there is no genuine dispute with respect to any element of § 542(b), Robert argues that he, and not the Trustee, is the party entitled to summary judgment. First, Robert argues that even if there is a debt in favor of Alexandra under the Marital Debt section of the JOD, and Robert defaults on that debt, the sole remedy under the JOD is for Alexandra to have the right to petition for

spousal support, not demand that Robert pay his 50% of the unpaid debts listed in the Marital Debt section of the JOD.

Robert is correct that there is a remedial provision in the Marital Debt section of the JOD — two paragraphs after the mutual promises to each be responsible for 50% of the unpaid debts — that reads as follows:

> in the event that either party is in default and fails to pay the debts as set forth above, and such failure to pay is impacting the other parties['] credit, the injured party can petition for spousal support in an amount to pay the debt obligations to preserve credit.

By its plain terms, this remedy is only available in one limited circumstance — when a default by either Alexandra or Robert "is impacting the other parties['] credit." There is no evidence before the Court that any default by Robert is "impacting [Alexandra's] credit." Therefore, this remedy is not available here. But that does not mean that there is *no* remedy available to Alexandra — now the Trustee — for a default by Robert with respect to his promise to be responsible for 50% of the debts listed in the Marital Debt section of the JOD. To so hold would require the Court to read into the JOD a remedial restriction that would render toothless the parties' agreement in the JOD to split the responsibility for the listed debts unless they could show that a default by one has impacted the credit of the other.

Robert has not cited any authority under Michigan law that would allow the Court to make up such a restriction on each party's right to seek a remedy upon a

- 12 -

default by the other. And if the Court were to do so it would be acting contrary to well-established Michigan law that allows Michigan courts to fashion an appropriate remedy, including the entry of a money judgment, when a party to a consent judgment of divorce fails to honor an obligation under it. See Butler v. Butler, 97 N.W.2d 67, 73 (Mich. 1959) (in action to review alimony, observing that the trial court "has basic responsibility for enforcement of his own decree and considerable discretion in the means to be employed") (citing Krachun v. Krachun, 93 N.W.2d 885 (Mich. 1959)); Corley v. Corley, 261 N.W.2d 65, 66-67 (Mich. Ct. App. 1977) (in action to enforce past due alimony, finding it "reasonable and fair to reduce the amount to a judgment on which the petitioner can execute in accord with [Mich. Comp. Laws Ann.] § 552.27," which provides that, in divorce cases, "the court shall have the power to award issues, to decree costs, and to enforce its decrees, as in other cases").

Robert next argues that the hold harmless provision in the JOD cannot be enforced against him because Alexandra has not suffered any injury on account of Robert's marital debt. According to Robert, because Alexandra filed her bankruptcy case just a short while after consenting to the JOD, Alexandra did not suffer any injury. None of the creditors listed in the Marital Debt section of the JOD ever made

demand on Alexandra to pay their debts. And none of them ever will because Alexandra has now received a chapter 7 discharge of her debts.

In support of this argument, Robert cites Shapiro v. Harajli (In re Harajli), 469 B.R. 274 (Bankr. E.D. Mich. 2012). In that case, the debtor and his wife were jointly liable on a line of credit with Comerica Bank that was secured by a mortgage on their home. When they divorced, the judgment awarded the debtor's wife the home and stated that the wife would "hold [the debtor] harmless for same." Id. at 277-78. The judgment said nothing about the Comerica Bank line of credit. Years later, the ex-wife drew down significant cash advances on the Comerica Bank line of credit. The debtor filed bankruptcy and obtained a discharge of liability for the Comerica Bank debt. But the debtor's trustee filed suit against the ex-wife to recover the cash advances that she took on the line. The trustee had several theories, including that the hold harmless agreement in the divorce judgment required the ex-wife to pay back the cash advances. The bankruptcy court rejected all the trustee's theories and cited three reasons why it rejected the trustee' argument regarding the hold harmless agreement. First, the court was not persuaded that the hold harmless provision applied to the Comerica Bank debt; second, even if the hold harmless provision could be read as applying to the Comerica Bank debt, it did not logically follow that holding the debtor harmless meant that the debtor's harm was

equal to the amount of the cash advances taken by the ex-wife; and third, there was no evidence that the debtor was harmed by these cash advances. Id. at 284.

At first glance, the statements in Harajli arguably support Robert's position. But Harajli is easily distinguishable from this case on two grounds. First, the Harajli court noted that it was not clear whether the hold harmless provision in that case applied at all to the Comerica Bank debt. In contrast, there is no question in the case before the Court that the hold harmless provision in the JOD does apply to the unpaid debts listed in the Marital Debt section of the JOD. Unlike Harajli, the provision in the JOD in this case expressly says so: Robert agreed to "be responsible for 50% of the balance of the debt that remains owing" after the sale of the Marital Home. There was no comparable promise in the divorce judgment in Harajli.

Second, the injury that the Harajli court said was absent in that case is present in this case. As noted earlier, the Complaint alleges that all the debts listed in the Marital Debt section of the JOD were incurred solely in Alexandra's name. Attached to the Trustee's Motion is a copy of the schedule E/F that the Debtor filed in her bankruptcy case. In it the Debtor lists each debt that is listed in the Marital Debt section of the JOD and attests that she is solely responsible for such debts. Robert does not provide any evidence to refute this fact and concedes that the creditors holding these unpaid debts do not have any direct recourse against him. The only

source of recovery for the debts owed to these creditors is the property in Alexandra's bankruptcy estate. But if Robert fails to honor the promise he made to Alexandra in the JOD, to "be responsible for 50% of the balance of the debt that remains owing" after the sale of the Marital Home, then Alexandra's bankruptcy estate will have fewer assets with which to pay such debts. The Trustee is correct that the bankruptcy estate, which is comprised of all Alexandra's legal and equitable interests in property, is injured by Robert's default under the JOD.

Robert next argues that it would be inequitable to require him to pay 50% of the debts listed in the Marital Debt section of the JOD. Even if the Court were to accept Robert's distinction that Alexandra — as opposed to her bankruptcy estate — has not been harmed and there is nothing for Robert to hold her harmless from, Robert's argument ignores the fact that the JOD is a contract based on an exchange of consideration. Consideration is among the "key elements of any contract in Michigan," including consent judgments of divorce. Foster v. Foster, 949 N.W.2d at 113. Alexandra and Robert struck a bargain in which they each made promises to the other. When Alexandra and Robert agreed to the JOD, they each promised the other that they would be responsible for 50% of certain debts if the sale of the Marital Home did not provide enough sale proceeds to pay those debts in full. The Trustee, now standing in Alexandra's shoes, is asking Robert to do just what he promised to

do when he made that bargain.  Robert is correct when he argues that the bankruptcy estate has only the rights in the JOD that Alexandra has.  But Robert is incorrect when he argues that the Complaint seeks to expand those rights.  It does not.  The Complaint seeks only to compel Robert to do that which he agreed to do when he signed the JOD.  No more, no less.  There is nothing inequitable in requiring Robert to do exactly what he promised to do in the JOD.

## **Conclusion**

Robert seems to believe that Alexandra's chapter 7 bankruptcy case somehow discharges *him* from his promise to Alexandra to be responsible for 50% of the debts listed in the JOD.  It does not.  There is no legal basis nor logical reason for Robert to be released from his bargained for promise under the JOD to be responsible for 50% of those debts just because Alexandra has now filed bankruptcy.  If anything, allowing Robert to be released from that promise now, just because of Alexandra's bankruptcy, would create a windfall for Robert under the JOD by allowing him to keep the benefits of the JOD without its burdens.

The plain language of the JOD that Alexandra and Robert agreed on states that the Marital Home is listed for sale and details how the sales proceeds will be applied to specific debts.  It then states what happens "if there aren't enough proceeds to pay all the parties['] debt": Alexandra and Robert "will equally be

responsible for 50% the balance of the debt that remains owing and will hold the other harmless." All the events required for enforcement of this provision have indisputably now occurred. The Marital Home was sold. The sales proceeds were applied to the debts listed in the JOD. There were not enough sales proceeds to pay those debts in full. By the plain terms of the JOD, Robert is responsible for 50% of those unpaid debts. The Court has no doubt that if Alexandra had not filed bankruptcy — and thereby turned her property interest in the JOD over to the Trustee — she could successfully proceed in the State Court to enforce Robert's obligations under the JOD. The fact that Alexandra filed this chapter 7 case, so that her right to enforce those obligations is now property of this bankruptcy estate, does not alter the terms of the JOD that Alexandra and Robert entered.

The Court will enter a separate order consistent with this opinion.

**Signed on December 3, 2020**



/s/ Phillip J. Shefferly
**Phillip J. Shefferly**
**United States Bankruptcy Judge**